# United States Court of Appeals for the Federal Circuit

---

**ASPEX EYEWEAR, INC.** AND
**CONTOUR OPTIK, INC.,**
*Plaintiffs-Appellants,*

v.

**ZENNI OPTICAL LLC.,**
*Defendant-Appellee.*

---

2012-1318

---

Appeal from the United States District Court for the Southern District of Florida in No. 09-CV-61468, Judge William J. Zloch.

---

Decided: April 19, 2013

---

MICHAEL A. NICODEMA, Greenberg, Traurig, LLP, of Florham Park, New Jersey, argued for the plaintiffs-appellants.

GUY W. CHAMBERS, Duane Morris, LLP, of San Francisco, California, argued for the defendant-appellee. With him on the brief were HARVEY W. GURLAND, JR., J. RODMAN STEELE, GREGORY M. LEFKOWITZ, and KAREN CHUANG KLINE; KRISTINA CAGGIANO of Washington, DC.

Before NEWMAN, PROST, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Contour Optik, Inc., a company of Taiwan, and sublicensee Aspex Eyewear, Inc. (collectively "Aspex") sued Zenni Optical, LLC for infringement of several United States patents for magnetic clip-on eyewear such as sunglasses. The district court held that Aspex is collaterally estopped from pursuing this suit, based on earlier litigation between Aspex and Altair Eyewear, Inc. for infringement of the same patents; decisions reported at *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 386 F. Supp. 2d 526 (S.D.N.Y. 2005) (*Altair I*) (claim construction); *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 485 F. Supp. 2d 310 (S.D.N.Y. 2007) (*Altair II*) (summary judgment of non-infringement); and *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. App'x 697 (Fed. Cir. 2008) (*Altair III*) (affirming in part, reversing in part, and remanding).

Aspex argues that collateral estoppel does not apply. Aspex points out that certain of the patent claims in suit against Zenni Optical were not included in the *Altair* litigation, and that several terms now at issue had not previously been construed or were incorrectly construed. On review of the premises, we affirm the district court's ruling of collateral estoppel,[1] for there is no material difference as to the claims now in suit, nor difference

---

[1]     *Aspex Eyewear, Inc. v. Zenni Optical, LLC,* No. 09-cv-61468 (S.D. Fla. Mar. 21, 2012), ECF No. 195 *(Zenni I)* (report and recommendation); *Aspex Eyewear, Inc. v. Zenni Optical, LLC,* No. 09-cv-61468 (S.D. Fla. Mar. 30, 2012), ECF No. 206 (*Zenni II*) (adopting report and recommendation and granting summary judgment).

between the Altair and Zenni Optical products to which the claims are applied.

BACKGROUND

The complaint charged Zenni Optical with infringement of U.S. Patents No. 5,737,054 (the '054 patent), No. 6,012,811 (the '811 patent), and No. 6,092,896 (the '896 patent), all directed to clip-on eyewear in which magnets secure the bridge portions of the eyewear. The Summary of the Invention in the '811 patent describes the general subject matter of the three patents:

> The present invention provides methods and apparatus to easily, firmly and elegantly attach auxiliary frames to primary frames, based on magnetic members at the bridges of frames. The invention has numerous advantages. For example, it creates a very strong support for attaching auxiliary frames to primary frames, it is relatively easy to manufacture, it is easier to blend into the general design of frames, and it makes the auxiliary frames easily applicable to primary frames even with just one hand.

'811 patent col.2 ll.17–25.

The *Altair* litigation involved the same three patents, and many of the same claims now in suit. For example, Aspex asserted Claim 1 of the '811 patent against Altair, and again against Zenni Optical:

1. An eyeglass device comprising:

a first frame including

two retaining mechanisms for supporting a pair of lenses, and defining a frontal plane,

a bridge connecting the two retaining mechanisms and holding the two retaining mechanisms together, and

a first magnetic member at the bridge for magnetically coupling to another magnetic member at the bridge of a second frame;

such that when coupled,

the two frames are attached together,

due to the locations of the magnetic members, one of the frames is restricted from moving downwards relative to the other frame, and

the two magnetic members are coupled at a surface that is not parallel to the frontal phase.

The *Altair* district court construed "retaining mechanisms" in the '811 and '896 patents as requiring supporting frames such as rims around the lenses, and construed "frame" in the '054 patent as requiring rims around the lenses. *Altair I,* 386 F. Supp. 2d at 536, 540. On this construction the district court granted summary judgment of non-infringement of all three patents, because "none of [Altair's] products contain a rim around the sunglass lenses." *Altair II,* 485 F. Supp. 2d at 314–15.

On appeal, the Federal Circuit affirmed that "retaining mechanisms" requires "rims or their equivalents." Since all of Altair's magnetic clip-on sunglasses were rimless, this court affirmed that the '811 and '896 patents were not infringed. *Altair III,* 288 Fed. App'x at 704. However, with respect to the '054 patent, the Federal Circuit held that "a 'frame' as that term is used in the '054 patent is not limited to one with rims." *Id.* at 706. This court remanded, but on remand the district court held that the asserted '054 claim (only claim 1 was asserted), when construed as unlimited to a frame with rims, is invalid for obviousness. This court affirmed. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.,* 484 Fed. App'x 565 (Fed. Cir. 2012). Aspex does not separately argue the preclusive effect of this determination.

Applying the *Altair* rulings to the Zenni issues, the district court observed that Zenni's accused rimless magnetic clip-on sunglasses are materially indistinguishable from Altair's rimless magnetic clip-on sunglasses. *Zenni I*, at 21 ("Indeed, Plaintiffs have failed to identify (either in their written descriptions or at oral argument) any material difference between the non-infringing Altair . . . eyewear and the accused Zenni eyewear."). The district court held that the *Altair* decisions settled the question of whether such eyewear can infringe the '811 and '896 patents. *Id.*, at 20–21. Thus the district court held that collateral estoppel bars this suit against Zenni Optical. *Zenni II*, at 2–3. Aspex appeals.

## DISCUSSION

Collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries" and precludes a plaintiff "from asserting a claim that the plaintiff had previously litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (internal quotation marks omitted).

A ruling of collateral estoppel receives plenary review on appeal. *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003). Since the criteria of collateral estoppel are not unique to patent issues, on appellate review we are guided by the precedent of the regional circuit. *Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003). However, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012) ("[T]he question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases, and we therefore apply our own law to that issue.").

The district court cited the principles of estoppel as stated by the Eleventh Circuit:

> To claim the benefit of collateral estoppel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (citations omitted). The district court found that each of these criteria is met.

Aspex argues that the first *Christo* criterion is not met in that "the issue at stake" is not "identical" because the claim terms that were construed and applied in the *Altair* litigation are not the same as the claim terms now requiring construction. Aspex also argues that the claims of the '811 and '896 patents were not correctly construed in the *Altair* litigation, and that on the correct construction of the new terms, infringement by the Zenni products could be found. Aspex states that the issues now raised were not actually litigated and were not part of the prior judgment, and also that it did not have a full and fair opportunity to litigate. Thus Aspex argues that collateral estoppel does not arise, and that it is entitled to trial of infringement by the Zenni products on the correct claim construction.

Aspex states that the Zenni infringement turns on the meaning of the claim terms "primary frame," "auxiliary frame," "first frame," and "second frame," and that these terms were not at issue in the *Altair* litigation. Aspex states that if these terms had been construed correctly in *Altair*, the ruling in the *Altair* litigation could have been

different. Thus Aspex argues that the *Altair* proceeding does not estop this suit against Zenni.

Zenni responds that the question of estoppel is not whether the now-asserted claims contain some terms that were not previously construed, but whether the '811 and '896 claims in suit can be asserted against Zenni, for the Zenni eyewear is indistinguishable from the Altair eyewear against which the same patents were previously litigated to final judgment of non-infringement. Zenni states that there are no material differences between Altair's magnetic rimless sunglasses and Zenni's magnetic rimless sunglasses; indeed, no material differences are identified in Aspex's briefs. Zenni states that Aspex had a full and fair opportunity in *Altair* to litigate infringement of the same patents as to the same products, and thus that Aspex is collaterally estopped from relitigation. In response Aspex states that it did not have a full and fair opportunity to litigate these new issues of claim construction and infringement, and that these issues were not a critical and necessary part of the prior judgment.

Aspex argues that the issues now at stake are different because some of the claims of the '896 patent that are asserted against Zenni were not asserted against Altair, although several claims were commonly asserted. The common claims are Claim 1 of the '054 patent, which is not at issue on appeal; Claims 1, 22, and 31 of the '811 patent; and Claims 13, 15, and 19 of the '896 patent. Aspex states that the newly-asserted claims contain limitations that were not previously construed and applied. However, every claim asserted against Zenni contains the same "retaining mechanism" limitation, in the same context, that the Federal Circuit in *Altair III* found dispositive of non-infringement. The Zenni and Altair products are materially identical. In such circumstances, the assertion of different claims in a subsequent suit does not create a new "issue" to defeat preclusion. *See Bourns, Inc. v. United States*, 537 F.2d 486, 491 (Ct.

Cl. 1976) ("It is the identity of the issues litigated and decided, and which were essential to the prior judgment, that determines whether the estoppel should be applied . . . . There is no reason to employ a different approach in a patent context by looking to the claims litigated instead of to the issues that were decided.").

No changed circumstances are here shown, nor any new evidence nor materially different argument that was unavailable to Aspex in the *Altair* litigation. The Aspex claims now in suit contain the same "retaining mechanism" term that was construed in *Altair* as requiring rims. This construction is determinative of non-infringement by the Zenni eyewear; it is irrelevant whether the additional claims now in suit contain additional terms that were not previously construed. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311–12 (Fed. Cir. 2010) (applying collateral estoppel when "the infringement issue in [the second] case is identical to the one in [the first case]," for the "differences in the facts . . . do not change the fact that the modified rig does not infringe"); *cf. Nystrom v. Trex Co.*, 580 F.3d 1281, 1285–86 (Fed. Cir. 2009) (res judicata bars a second attempt to litigate "the same issues" if "the accused device of the second suit remains unchanged with respect to the corresponding claim limitations at issue in the first suit"). A full and fair opportunity to litigate is the touchstone of any preclusion analysis. *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008). The "desire not to deprive a litigant of an adequate day in court" is balanced against the "desire to prevent repetitious litigation of what is essentially the same dispute." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994).

The selection of additional claims for litigation and additional terms for "construction" does not override the holding of non-infringement. In determining whether Aspex had a full and fair opportunity to litigate the dis-

positive claim limitations in the prior proceeding, "[i]t is the issues litigated, not the specific claims around which the issues were framed, that is determinative. Only by focusing on the issues, and examining the substance of those issues, can the second court ascertain whether the patentee had the requisite full and fair chance to litigate . . . in the first suit." *Westwood Chem., Inc. v. United States*, 525 F.2d 1367, 1372 (Ct. Cl. 1975); *see Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 390–91 (1985) ("[A] party is precluded from asserting a claim that he had a 'full and fair opportunity' to litigate in a prior action.").

The record shows that Aspex fully litigated the meaning of the term "retaining mechanism" in the first suit, and that it was finally adjudicated that "retaining mechanism" as used in these patents requires a rim around the lens, which resulted in a finding of non-infringement. Although Aspex argues that the terms "primary frame," "auxiliary frame," "first frame," and "second frame" were not at issue and therefore were not construed in the *Altair* litigation, the issues of infringement are not distinguished. *See Reese v. Verizon Cal., Inc.*, No. 2012-1048, 2012 WL 6634227, at *2 (Fed. Cir. Dec. 21, 2012) (collateral estoppel applies when the same technology is said to infringe the same patent); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987) ("The prior determination of certain issues, including the issues of claim construction and of infringement by [one model] and non-infringement by [another model], bars judicial redetermination of those issues.").

The district court correctly defined the issue as infringement by magnetic rimless clip-on eyewear in view of the final construction of "retaining mechanisms" as requiring rims. The court correctly found that Aspex had a full and fair opportunity to litigate this issue. We thus affirm that Aspex is collaterally estopped from relitigating

infringement of these patents against these Zenni products.

**AFFIRMED**